IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE J. LUE, SR., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-4497 |
| | : | |
| BOROUGH OF COLLINGDALE, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                **January 5, 2015**

      Plaintiffs Andre J. Lue, Sr., and Eric N. Jones bring claims pursuant to 42 U.S.C. § 1983 against the Borough of Collingdale, two members of the Borough's police force (Police Chief Robert W. Adams and Officer Michael Coverdale), and all members of the Borough Council (Mayor Frank Kelly, Council President Kathleen M. Murano, Vice President Mark J. Loftus, and Council Members Kenneth Burns, Joseph R. Ciavarelli, Jeff Bucolo, and Deborah LaBuono), alleging violations of their Fourth and Fourteenth Amendment rights. Plaintiffs challenge the seizure and retention of their lawfully registered firearms and their persons following an altercation in which nonparty Dennis Aldridge chased Plaintiffs with a hammer. They allege their guns and their persons were seized without probable cause, violating their rights under the Fourth Amendment. They also allege their detention at the police station for a period of time following the altercation and the Police Chief's retention of their guns even after they were released from custody violated—and, as to the guns, which have yet to be returned, continues to violate—their substantive due process rights. Defendants have filed a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted.

**FACTS**[1]

Sometime during the evening on June 15, 2014, Officer Coverdale responded to a report of "2 subjects armed with guns" sitting inside a car outside 228 Marshall Avenue, Lue's residence.[2]  *See* Am. Compl. ¶ 2 & Ex. C (Affidavit of Probable Cause).  After parking his patrol car around the corner, Officer Coverdale proceeded on foot down the 200 block of Marshall Avenue and observed four men—eventually identified as Lue, Jones, Aldridge, and Rashad Core—"involved in a fight in the front yard of 224 Marshall Ave."  Am. Compl. Ex. C.  Officer Coverdale, along with "assisting agencies," proceeded to break up the fight and to detain those involved.[3]  *See id.*  While at the scene, Officer Coverdale confiscated several weapons—"[t]wo Glock handguns, a black handled claw hammer, silver colored aluminum bat and a wooden bowling pin"—from the front yard where the fight had taken place.  *Id.*  He later gave the confiscated weapons to Police Chief Adams.

Witnesses to the incident advised the police that Aldridge initiated the altercation by chasing after the others with a hammer and threatening to hit them because of a prior dispute between the parties.  Witnesses also told police that while being pursued by Aldridge, Lue and

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint and the exhibits attached thereto, including Officer Coverdale's affidavit of probable cause in support of his criminal complaint against Aldridge, which, as discussed in greater detail below, this Court may properly consider in evaluating the instant motion to dismiss.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

[2] It is not clear what time Officer Coverdale responded.  The affidavit of probable cause lists his response time as "about 2021 hours," Am. Compl. Ex. C, while the Amended Complaint alleges the altercation prompting his response occurred "around 10:30 P.M.," Am. Compl. ¶ 13.

[3] The officers also detained a female present at the scene for "failing to comply with police orders to stay away from the scene where weapons were located."  Am. Compl. Ex. C.

Jones each pointed a gun at him to stop him.[4]  At some point, Officer Coverdale determined the two handguns recovered from the front yard of 224 Marshall Avenue belonged to Lue and Jones, who possessed valid concealed carry licenses for their respective firearms.  According to the Amended Complaint, Officer Coverdale knew the handguns were lawfully registered to Plaintiffs when he confiscated them.  *See* Am. Compl. ¶ 16.

Police officers eventually took Plaintiffs to the Collingdale Borough police station and placed them in holding cells while officers discussed what charges to levy against them.[5]  *See id.* ¶¶ 30-31.  Ultimately, Plaintiffs were released without being charged.  Aldridge was initially taken to the hospital "for injuries to his hand consistent with a closed fist strike," but was charged the following day with possessing instruments of crime, terroristic threats, and harassment.  *See* Am. Compl. Ex. C.  Neither the Amended Complaint nor the affidavit of probable cause specifies what happened to Core after the altercation.

On June 26, 2014, eleven days after the altercation, an attorney for Plaintiffs wrote to Police Chief Adams and requested copies of the property receipts for Plaintiffs' guns and immediate return of the guns.  The following day, Chief Adams faxed property receipts for two

---

[4] According to witnesses, Aldridge exited a vehicle, armed with the hammer, and approached Lue, who was sitting in his van.  After exchanging words with Aldridge, Lue reversed the van down the street as Aldridge chased after him with the hammer.  Lue produced his gun and pointed it at Aldridge, warning him to stop.  When Aldridge would not stop, Lue drove forward and parked in front of 228 Marshall Avenue.  Still armed with the hammer, Aldridge then began to chase Jones, who also produced a gun and pointed it at Aldridge, causing him to stop.  Aldridge next began to fight with Core in the street, eventually moving to the front yard of 224 Marshall Avenue, where Officer Coverdale found all four men "involved in a fight."  *Id.*

[5] The Amended Complaint does not identify the officers who transported Plaintiffs to the police station and discussed whether to charge them, nor does it allege how long Plaintiffs were detained at the station.  At oral argument, Plaintiffs' counsel admitted Officer Coverdale was not involved in taking Plaintiffs to the police station and had no further involvement with Plaintiffs after seizing their guns and giving them to Chief Adams.  Counsel also represented he believed Plaintiffs were detained for a period of several hours.

guns[6] to Plaintiffs' counsel along with a letter stating the seized weapons were "secured at the Collingdale Police Department, as a result of the incident and the potential for continued problems involving the actor arrested."  Am. Compl. Ex. F.  The letter also stated Adams "would like to wait a few weeks as a cooling off period and return the weapons on the 1st of August," but advised that if Plaintiffs did not want to wait until then they could "file for a return of property order through the Court of Common Pleas in Media."  *Id.*

In lieu of seeking the return of property order suggested by Chief Adams, Plaintiffs filed the instant lawsuit on July 29, 2014, three days before the return date Adams had set.[7]  In their Amended Complaint, filed on September 8, 2014, Plaintiffs bring claims against the Borough of Collingdale, Chief Adams, Officer Coverdale, and the members of the Collingdale Borough Council for violations of their Fourth and Fourteenth Amendment rights based on the allegedly unlawful seizure and retention of their guns and their persons.  Plaintiffs allege the seizure and retention of their guns were done pursuant to a policy promulgated by the Borough Council or pursuant to Borough custom.  Defendants ask this Court to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6).

**DISCUSSION**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the

---

[6] The Court notes that although one of the property receipts is for a .40 caliber Glock 22 pistol taken from Jones, the other receipt appears to be for a gun the police recovered on June 8, 2014, a week before the altercation at issue in this case.

[7] Due to the pendency of this lawsuit, Chief Adams did not return the guns on August 1.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11.  The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## A.  Seizure and Retention of Plaintiffs' Guns

Plaintiffs allege Officer Coverdale seized their guns without "probable cause of [their] involvement in criminal activity, . . . a warrant or exigent circumstances," violating their Fourth Amendment right to be free of unreasonable seizures.  Am. Compl. ¶ 27.  Plaintiffs also allege Chief Adams's retention of their guns during a "cooling off period" violated their substantive due process rights under Fourteenth Amendment.[8]  *See id.* ¶ 38 (alleging "[t]he cooling off period imposed upon Plaintiffs by Chief Adams and Council (and executed by Officer Coverdale) is nothing less than an arbitrary governmental deprivation of property without due

---

[8] Because, as set forth below, the facts alleged in Plaintiffs' Amended Complaint and the affidavit of probable cause demonstrate the seizure of Plaintiffs' guns was supported by probable cause, Chief Adams's retention of the guns is not actionable as a Fourth Amendment violation. *See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("Where . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure."); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) (holding a seizure is complete once an individual has been meaningfully dispossessed of property and if the seizure was justified by probable cause, the Fourth Amendment "cannot be invoked by the dispossessed owner to regain his property"); *Fox v. Van Oosterum*, 176 F.3d 342, 350-51 (6th Cir. 1999) (holding the refusal to return property lawfully seized does not violate the Fourth Amendment).

process of law").[9]  Because the factual allegations regarding the seizure and retention of Plaintiffs' guns do not rise to the level of a constitutional violation, these claims will be dismissed.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Ordinarily, the seizure of personal property situated on private premises must be "accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). Under the plain-view doctrine, however, police may seize incriminating evidence in plain view without a warrant so long as (1) the officer does not "violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the incriminating character of the evidence is "immediately apparent," and (3) the officer has "a lawful right of access to the object itself" in that the access is the not the result of an illegal trespass. *Horton v. California*, 496 U.S. 128, 136-37 (1990); *see also Soldal v. Cook Cnty.*, 506 U.S. 56, 66 (1992); *United States v. Telfair*, 507 F. App'x 164, 172 (3d Cir. 2012) (characterizing the "lawful right of access" requirement as "meaning the police cannot commit illegal trespass to access the item in plain view"). The facts set forth in the Amended Complaint and the affidavit of probable cause attached thereto demonstrate the seizure was reasonable under this test.

Plaintiffs do not argue Officer Coverdale's presence at the scene of the fight was unlawful, and it is apparent the opposite is true, as Coverdale's observation of a fight in progress in close proximity to guns and other weapons, on the same block where two armed individuals

---

[9] In their opposition to Defendants' motion to dismiss, Plaintiffs acknowledge "there exists no violation of procedural due process" and they are pursuing only "alleged violations of substantive due process." Pls.' Opp'n 1 n.2.

had been reported, provided ample justification for his entrance onto the property.[10]  *See Brigham City v. Stuart*, 547 U.S. 398, 406 (2006) (upholding as reasonable officers' warrantless entry of a home after observing a fracas taking place in the kitchen wherein a juvenile being restrained by four adults broke free and punched one of the adults in the face); *United States v. Myers*, 308 F.3d 251, 253, 264 (3d Cir. 2002) (holding an adolescent girl's statement to a police officer that her mother and her mother's boyfriend were inside the mother's apartment fighting and that the boyfriend had a gun "certainly created a sufficient exigency to allow [the officer] to enter [the girl's] home to investigate").  The facts alleged thus show Coverdale did not violate the Fourth Amendment in arriving at the scene of the fight and had a lawful right of access to the guns.

As to the requirement that the incriminating character of the items seized be immediately apparent, this requirement is satisfied if there is "probable cause to associate the property with criminal activity."  *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)); *see also United States v. Ballard*, 551 F. App'x 33, 38-39 (3d Cir. 2014).  In other words, the facts available to the officer must be sufficient to "warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime."  *Brown*, 460 U.S. at 742 (citation and internal

---

[10] Although the seizure in this case occurred in the front yard of a private residence, the residence did not belong to either Plaintiff, *see* Am. Compl. ¶¶ 2-3, and it is not clear whether the area where the seizure occurred would be protected as a part of the home for Fourth Amendment purposes, *see Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (noting the Fourth Amendment "does not . . . prevent all investigations conducted on private property," but protects "the area immediately surrounding and associated with the home . . . as part of the home itself" (citation and internal quotation marks omitted)).  The Court will nevertheless assume, for purposes of this Memorandum, that the seizure occurred in a location where police needed "some prior justification under the Fourth Amendment" for accessing the guns.  *See Texas v. Brown*, 460 U.S. 730, 738 (1983) (plurality opinion); *cf. Payton v. New York*, 445 U.S. 573, 587 (1980) (holding a seizure involving property in plain view in a *public* area is "presumptively reasonable" so long as "there is probable cause to associate the property with criminal activity").

quotation marks omitted). The belief need not be correct or even "more likely true than false"; rather, "[a] practical, nontechnical probability that incriminating evidence is involved is all that is required." *Id.* (citation and internal quotation marks omitted). According to the affidavit of probable cause, when Officer Coverdale seized the guns, he had received a report about two individuals armed with guns on the 200 block of Marshall Avenue and observed a fight in progress in the front yard of 224 Marshall Avenue with guns and other weapons lying nearby on the ground. Despite Plaintiffs' conclusory allegation to the contrary,[11] these facts were sufficient to support a reasonable belief that the participants in the fight were committing an offense involving the weapons and that the guns might be "useful as evidence of a crime."[12] *Brown*, 460 U.S. at 742; *see, e.g.*, 18 Pa. Cons. Stat. § 2701(a) (defining the offense of simple assault to include "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another"; "negligently caus[ing] bodily injury to another with a deadly weapon"; and "attempt[ing] by physical menace to put another in fear of imminent serious bodily injury"); 18

---

[11] The Amended Complaint alleges the police seized the guns even though officers were "[w]anting for probable cause of Plaintiffs['] involvement in criminal activity." Am. Compl. ¶ 27. The Court need not accept as true this type of "mere conclusory statement[]" unsupported by factual allegations. *See Iqbal*, 556 U.S. at 678-79.

[12] Given the volatile situation he encountered upon his arrival and the close proximity of the guns to the fight-in-progress, Officer Coverdale was also justified in seizing the guns and other weapons lying on the lawn, at least temporarily, to protect officer and public safety. *See, e.g.*, *United States v. Harris*, 747 F.3d 1013, 1018-19 (8th Cir. 2014) (holding police were justified in removing a handgun that was sliding out of the pants pocket of a man sleeping on a bench in a highly trafficked bus station to ensure the safety of the public from the risks posed by the exposed and unguarded firearm); *United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010) (holding officers responding to a 911 call about an ongoing violent domestic dispute were justified in temporarily seizing a shotgun present in the residence so they could safely investigate the call); *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003) (holding "a police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety").

Pa. Cons. Stat. § 5503(a)(1) (defining the offense of disorderly conduct to include "engag[ing] in fighting or threatening, or in violent or tumultuous behavior" either "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof").[13]

Plaintiffs argue Defendants' reliance on the affidavit of probable cause is misplaced because they have alleged "an assault averted not a fight." Pls.' Opp'n 9.  Although Plaintiffs imply the facts set forth in the affidavit of probable cause are at odds with the allegations in their Amended Complaint, the Court perceives no inconsistency.  As Plaintiffs note, the Amended Complaint "aver[s] a theory of self-defense," *id.* at 3 n.3, alleging Aldridge was the aggressor in the confrontation and Plaintiffs used their guns only "to protect themselves, prevent Aldridge from using the hammer to cause harm, and to make Aldridge freeze in place and halt the impending violence," all without firing any shots, Am. Compl. ¶ 14.  But the fact that Plaintiffs may actually have been acting in self-defense in the altercation is not inconsistent with Coverdale's observation of four individuals "involved in a fight."  Am. Compl. Ex. C. Moreover, nothing in the Amended Complaint contradicts Officer Coverdale's account.  To the contrary, the Amended Complaint includes no details regarding what Officer Coverdale encountered when he arrived on the 200 block of Marshall Avenue or how the seizure of Plaintiffs' guns and persons transpired, including where the participants in the altercation and their weapons were located or what they were doing when the police arrived.  Plaintiffs' allegations that they acted in self-defense thus do not require the Court to disregard the affidavit of probable cause.  *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding a plaintiff must "explain her position" to avoid the apparent meaning or significance of a document

---

[13] Although the participants in the fight were on private property when Officer Coverdale arrived on the scene, the altercation created a public disturbance in the neighborhood, prompting several residents to call the police.  *See* Am. Compl. ¶ 13.

or other exhibit attached to the complaint); *cf. Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("Where a civil rights plaintiff attaches a police report to his complaint *and alleges that it is false*, . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss." (emphasis added)).[14]

Nor does the fact that Officer Coverdale ultimately determined, upon investigation, that Aldridge initiated the altercation render the seizure of the guns unreasonable. The affidavit of probable cause reveals that witnesses to the incident told police that both Lue and Jones pointed their guns at Aldridge during the altercation, conduct which may constitute an assault. *See Commonwealth v. Gonzales*, 483 A.2d 902, 905 (1984) ("[T]he mere act of pointing a gun at an individual is sufficient conduct to constitute an assault."). While witnesses advised the police that Plaintiffs brandished their guns in an effort to stop Aldridge, *see* Am. Compl. Ex. C, the officers were not required to resolve this inherently fact-bound defense on the scene, *see Davis v. Malitzki*, 451 F. App'x 228, 234 (3d Cir. 2011) (holding a suspect's claims of self-defense could not defeat "already-present probable cause"); *Holman v. City of York*, 564 F.3d 225, 231 (3d Cir. 2009) (holding an officer was not required to resolve factual questions pertaining to the defense

---

[14] Plaintiffs' efforts to distance themselves from the facts alleged in the affidavit of probable cause are also unavailing. Plaintiffs do not challenge the authenticity of the affidavit, which was drafted to support the charges against Aldridge and which Plaintiffs referenced in and included as an exhibit to both their original Complaint and their Amended Complaint. And contrary to their assertion that they have not adopted Officer Coverdale's version of events, *see* Pls.' Opp'n 9, Plaintiffs affirmatively rely on the affidavit of probable cause to establish that Coverdale lacked probable cause to seize their guns, *see, e.g.*, Am. Compl. ¶¶ 15, 37 (citing to affidavit as demonstrating that Officer Coverdale determined that the guns seized were lawfully registered to Plaintiffs and that Plaintiffs were victims of Aldridge); Pls.' Opp'n 2-3 (recounting facts as set forth in the affidavit of probable cause). In these circumstances, it is appropriate to consider the facts set forth in the affidavit of probable cause in evaluating whether Plaintiffs have stated a plausible claim for relief. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

of necessity in evaluating whether there was probable cause to arrest an individual for defiant trespass); *Gorman v. Bail*, 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013) (holding "self-defense is not the type of affirmative defense that officers must consider or disclose in affidavits of probable cause"). Moreover, the affidavit was not sworn until June 16, 2014, and does not indicate when Coverdale determined that Aldridge was the aggressor, much less state that he did so while still at the scene. Because the facts available to Officer Coverdale while at the scene of the altercation were sufficient to warrant him in the reasonable belief that the guns "m[ight] be . . . useful as evidence of a crime," *Brown*, 460 U.S. at 742, the seizure was justified under the Fourth Amendment,[15] and Plaintiffs' claim for unlawful seizure of their property will be dismissed as to all Defendants. *See Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 476, 482 (3d Cir. 2003) (holding for there to be liability under § 1983, there must be a violation of the plaintiff's constitutional rights).

After seizing Plaintiffs' guns, Officer Coverdale "remitted the confiscated weapons . . . to Defendant Adams," who declined Plaintiffs' request, made through their attorney eleven days after the altercation, that the guns be returned to them. *See* Am. Compl. ¶¶ 17, 23 & Exs. D, F. Chief Adams instead advised Plaintiffs he wanted to "wait a few weeks as a cooling off period and return the weapons on the 1st of August." *See id.* Ex. F. Plaintiffs allege Chief Adams's intentional refusal to return their guns to them, when he knew or should have known the guns

---

[15] Even if the information available to Officer Coverdale fell short of establishing actual probable cause for the seizure, given the proximity of the guns and other weapons to the fight and the fact that his presence on the scene was the result of a report about two individuals with guns on the block, Officer Coverdale could reasonably have believed there was probable cause to associate the guns with criminal activity and is thus entitled to qualified immunity for seizing the guns. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (holding "law enforcement officers who 'reasonably but mistakenly conclude that probable cause is present' are entitled to qualified immunity" (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))).

11

were illegally seized, violates their substantive due process rights.[16] Plaintiffs also seek to hold the Borough and the individual Borough Council members liable for the alleged substantive due process violation, asserting Chief Adams imposed the cooling off period pursuant to a policy promulgated by the Council or, alternatively, the imposition of a cooling off period is a customary practice in the Borough.

The Fourteenth Amendment's Due Process Clause prohibits the States from "depriv[ing] any person of life liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Here, Plaintiffs allege a violation of their rights under the substantive component of the Due Process Clause, which protects individuals against arbitrary government actions, regardless of the fairness of the procedures used to implement them. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 845 (1998). The Supreme Court has emphasized "that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846 (citation and internal quotation marks omitted). Executive action rises to this level when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8.

Although Chief Adams declined to return Plaintiffs' guns to them upon their request, he advised them that if they did not wish to wait until the end of the cooling off period, they could "file for a return of property order through the Court of Common Pleas in Media." Am. Compl.

---

[16] The Amended Complaint alleges it was Chief Adams who refused to return Plaintiffs' guns to them during the cooling off period. *See* Am. Compl. ¶ 17, 23. Plaintiffs do not allege Officer Coverdale had any involvement in the retention of their guns after turning the guns over to Chief Adams, and at oral argument, Plaintiffs conceded Coverdale had no such involvement. Consequently, Officer Coverdale cannot be liable for any alleged substantive due process violation. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (holding a civil rights complaint against an individual government defendant must aver personal involvement by the defendant in the alleged wrongdoing to survive a Rule 12(b)(6) motion to dismiss).

Ex. F.  Plaintiffs admittedly did not pursue this available state court remedy—a motion for return of property pursuant to Pennsylvania Rule of Criminal Procedure 588[17]—which consistently has been held to "provide[] an adequate post-deprivation remedy when police seize property pursuant to an investigation."  *McKenna v. Portman*, 538 F. App'x 221, 224-25 (3d Cir. 2013); *see also Welsch v. Twp. of Upper Darby*, No. 07-4578, 2008 WL 3919354, at *5 (E.D. Pa. Aug. 26, 2008); *Potts v. City of Phila.*, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002).  Plaintiffs' failure to avail themselves of this remedy is fatal to their substantive due process claim as the Borough's treatment of Plaintiffs is "hardly arbitrary when the state has given [them] the means to correct the errors [they] allege[]."  *Mora v. City of Gaithersburg*, 519 F.3d 216, 231 (4th Cir. 2008); *see also DeOrio v. Del. Cnty.*, No. 08-5762, 2009 WL 2245067, at *2 (E.D. Pa. July 27, 2009) ("Requiring individuals to obtain a court order to retrieve firearms which were lawfully taken is not egregious nor does it shock the conscience."); *Welsch*, 2008 WL 3919354, at *6 (same).  Plaintiffs' substantive due process claim based on the deprivation of their property will therefore be dismissed.

**B.     Seizure and Detention of Plaintiffs' Persons**

Plaintiffs also challenge the seizure and detention of their persons, alleging police (1) violated their Fourth Amendment rights by seizing their bodies without probable cause, transporting them to the police station, and placing them in holding cells, *see* Am. Compl. ¶ 30, and (2) violated their substantive due process rights under the Fourteenth Amendment by "arrest[ing] [them] and plac[ing] [them] in jail cells at the Collingdale police department for nothing more than being victims of a crime," *id.* ¶ 35.

---

[17] Under Rule 588, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof."  Pa. R. Crim. P. 588(A).

As noted, the Amended Complaint does not allege Officer Coverdale was involved in transporting Plaintiffs to the police station or in placing or keeping them in holding cells at the station, and at oral argument, Plaintiffs' counsel conceded Coverdale had no such involvement.[18] The Amended Complaint also does not allege Chief Adams played any role in detaining Plaintiffs' persons at any time, or that Adams knew of and acquiesced in Plaintiffs' detention by other officers. Absent such allegations, there is no basis to hold either officer personally liable for illegally seizing or detaining Plaintiffs' persons, and Plaintiffs' claims against these Defendants must therefore be dismissed. *See Evancho v. Fisher*, 423 F.3d 347, 353-54 (3d Cir. 2005) (affirming the dismissal of a § 1983 claim for retaliatory transfer where the plaintiff did not allege any facts to indicate the defendant government official personally directed her transfer or knew of and acquiesced in it).

Nor have Plaintiffs established a basis to hold the Borough or the individual Borough Council members liable for constitutional violations based on the seizure and detention of their persons. "[W]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). The claims against the Borough Council members are likewise based on policy allegedly promulgated by the Council. Yet the only policy alleged in the Amended Complaint pertains to the illegal seizure and retention of property, not persons. *See* Am. Compl. ¶ 32 (characterizing the cooling off period described by Chief Adams as "a coercive

---

[18] The affidavit of probable cause reflects that Officer Coverdale was involved in detaining Plaintiffs at the scene of the altercation after breaking up the fight, but Plaintiffs' illegal seizure claims do not appear to be based on this seizure, which undoubtedly was justified as an investigatory detention. *See Terry v. Ohio*, 392 U.S. 1 (1968).

14

and unlawful governmental deprivation of property based upon the unlawful policy promulgated by Borough Council"); *id.* ¶ 37 n.5 (identifying a Borough policy "to unlawfully seize lawfully registered firearms from the rightful owners without due process of law, and then to refuse return of the same"); *id.* ¶ 42 (characterizing the cooling off period memorialized in Chief Adams's June 27, 2014, letter as an unlawful policy and a "customary practice in the Borough"); *id.* ¶ 43 (referring to a "custom[] and/or policy of arbitrary deprivation of property").  Plaintiffs' claims against the Borough and the Borough Council members based on the seizure and detention of Plaintiffs' persons will therefore be dismissed.

C. **Claims Against Individual Borough Council Members and Official-Capacity Claims Against Police Chief Adams**

Because Plaintiffs have failed to allege a plausible claim for violation of their Fourth or Fourteenth Amendment rights, the Amended Complaint must be dismissed as to all Defendants. Insofar as Plaintiffs bring claims against the individual members of the Collingdale Borough Council "as policy makers for the Borough," Am. Compl. ¶ 6, and against Chief Adams in his official capacity, *see id.* ¶ 4, however, the claims will also be dismissed because they are redundant of Plaintiffs' claims against the Borough of Collingdale. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming the dismissal of claims against police officers in their official capacities as redundant of surviving claims against the township that employed the officers); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) (dismissing official-capacity claims against individual borough council members as redundant of claims against the borough); *cf. Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting

"[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent" (citation and internal quotation marks omitted)).[19]

**CONCLUSION**

For the reasons set forth above, the Court concludes Plaintiffs have failed to allege a plausible claim for violation of their Fourth or Fourteenth Amendment rights. The Third Circuit has cautioned that before dismissing a civil rights case a district court must allow the plaintiff to amend his complaint to correct any deficiencies, irrespective of whether the plaintiff has requested leave to amend, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007). Because it is not obvious to this Court that an amendment would be futile, Defendants' motion to dismiss will be granted, but Plaintiffs' Amended Complaint will be dismissed without prejudice. Should

---

[19] Although Plaintiffs do not expressly state whether they are suing the individual Council members in their individual or official capacities, the Court construes the Amended Complaint to assert claims against the Council members in their official capacities. Plaintiffs allege their claims are brought against "the Borough of Collingdale Council, as policy makers for the Borough of Collingdale," Am. Compl. ¶ 6, and in their opposition to Defendants' motion to dismiss, Plaintiffs explain they named the individual Council members as Defendants because the "'Borough Council' is not a person for the purpose of 42 U.S.C. § 1983," Pls.' Opp'n 6 n.4, and characterize their claims against the Council as *Monell* claims rather than individual-capacity claims, *see* Pls.' Opp'n 5; *see also id.* at 7 (arguing the Council members have "subjected the Borough of Collingdale to liability under § 1983 by virtue of their acts or omissions occurring in their official capacities").

Insofar as Plaintiffs bring claims against the Borough Council members in their individual (or personal) capacities, the claims are inadequately pleaded. Plaintiffs do not allege the individual Council members were personally involved in seizing or retaining their firearms or their persons; rather, Plaintiffs seek to hold the Council members liable based on their alleged promulgation of a policy for the Borough "to unlawfully seize lawfully registered firearms from the rightful owners without due process of law, and then to refuse return of the same." Am. Compl. ¶ 37 n.5. Even assuming the individual Council members could be personally liable for promulgating Borough policy, the Amended Complaint includes no facts regarding the form or manner in which the alleged policy was promulgated or the individual Council members' roles in promulgating it.

Plaintiffs wish to file a further amended complaint, they shall have until January 20, 2015, to do so.

    An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez\
Juan R. Sánchez, J.
